# Conkle, Administrator, Etc., Appellant, *v.* Laughlin.

*Decedents' estates—Wills—Devises—Estate to care for widow—Failure to care for—Assumpsit—Prior recovery—Unilateral obligation.*

An apparent intention that an agreement is indivisible will be enforced, and but one suit permitted for the breach thereof.

A unilateral obligation, imposed by a testator requiring the object of his bounty to take care of his widow during her lifetime, will be enforced, notwithstanding a recovery in a former suit for breach for the period therein set forth.

Where the testator intended a comprehensive provision for his widow during the remainder of her life, according to her reasonable necessities, and provided for the periodical payment thereof, he intended that they should be made when and as such payments are usually made, and where the defendant has failed to meet his obligations he will be required to do so, and a former suit thereon is not a bar to recovery for the period subsequent to the time of the first judgment.

Argued April 22, 1924. Appeal, No. 146, April T., 1924, by plaintiff, from judgment of C. P. Beaver Co., Dec. T., 1920, No. 97, on verdict for plaintiff in the case of Samuel M. Conkle, Administrator of Mary J. Laughlin, deceased, v. Robert L. Laughlin. Before ORLADY, P. J., HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit by administrator for maintenance and support of decedent. Before READER, J.

The facts are stated in the opinion of the Superior Court, and in the report of the former decision at 75 Pa. Superior Ct. 32.

Verdict for plaintiff in the sum of $92 and judgment thereon. Plaintiff appealed.

468, (1924).] Assignment of Error—Opinion of the Court.

*Error assigned* was in refusing to admit evidence on the part of the plaintiff of the cost of boarding and care of decedent from February 1, 1917, to January 14, 1918.

*William A. McConnel,* and with him *James H. Cunningham,* for appellant.

*Lawrence M. Sebring,* for appellee.

OPINION BY LINN, J., July 2, 1924:

Plaintiff, administrator of Mary J. Laughlin, deceased, brought assumpsit to enforce the personal obligation imposed on defendant Robert L. Laughlin, by the will of Thomas Laughlin, deceased, in favor of decedent's widow, Mary J. Laughlin, for the period from February 1, 1917, to January 15, 1918, the time of her death. The will provides: "Second: I give, devise and bequeath to my beloved wife, Mary J. Laughlin, the house and lot in which I now reside, during her lifetime and at her decease to go to Robert L. Laughlin, and to be his absolutely and to hold him and his heirs forever, and further Robert L. Laughlin is to board and to take care of his mother, and my wife, Mary J. Laughlin, is to receive forty dollars ($40.00) each year for spending money to do with as she may see fit.

"Third: I give, devise and bequeath to my son, John Laughlin, the house and lot on which he now resides, to be his absolutely, and to hold him and his heirs forever. My son, John Laughlin, is to pay his share of the forty dollars to his mother, the same as Robert L. Laughlin, each to share alike in making payment."

Recovery was refused below on the ground that in a prior suit judgment was obtained for a period ending January 29, 1917.

Thomas Laughlin died May 29, 1915. The widow and the sons, Robert and John, elected to take under his will, and the sons paid the $40 a year "spending money" to the widow; Robert performed his obligation to "board

and take care of his mother" for only four weeks after testator's death; then she elected to change her residence, and because she refused to live with defendant and his son and his daughter-in-law, he declined to perform. On January 31, 1917, she brought suit to recover for board and care for a period of eighty-six weeks, ending January 29, 1917; before that suit was tried, she died and her administrator was substituted; we sustained the recovery: 75 Pa. Superior Ct. 32. After her death, her administrator brought suit for her board and care for the remainder of her life, and that suit is now before us.

The learned trial judge denied recovery for the reason thus stated by him: "We reached the conclusion that this contract was an entire contract, and that there could be but one recovery upon it......She could recover but once under the contract in suit, and if she failed in her first action to claim all to which she was entitled, she cannot remedy that failure by bringing another action."

Within legal limits, parties may contract as they please, and the law will require performance, or payment; an apparent intention that the agreement is indivisible, will be enforced and but one suit permitted for the breach, as was the fact in decisions cited by appellee from other states interpreting bilateral contracts for support. But we have now to consider a unilateral obligation, imposed by a testator, and our first inquiry must be, what was his intention as expressed in his will, considered in the light of the attending circumstances. When he executed the will in 1913, testator's household consisted of himself, his wife, and his son, the defendant; when he died in 1915, defendant's son and daughter-in-law also lived with them; the widow was then eighty-two years old, and the particular object of his bounty; she was in poor health; in need of care, as the record in the first case disclosed, varying in degree at different times. Testator intended a comprehensive provision for his widow during the remainder of her life according to her reasonable necessities. If she left the homestead, as she

might, (Steele's App., 47 Pa. 437), her board had to be paid; such payments are usually periodical; he intended they should be made when and as such payments are usually made.

As defendant elected to take under the will, he must, of course, perform the obligation imposed by the will; it was a personal obligation: Wingett v. Bell, 14 Pa. Superior Ct. 558, 565. Now if he defaulted, why should the obligation not be enforced from time to time? Appellee replies, the obligation may be enforced, but only in one suit, in which the widow, on pain of losing board and care from the date of the first breach until the end of her life, must show her probable life expectancy and the probable value of her husband's bounty,—both speculative elements. In tort, some such rule applies for want of a better; in contracts those elements may be an inherent part of the agreement. Appellee relies on decisions made in other states, considering obligations to support for life created in bilateral contracts, for breach of which during the life of the beneficiary, recovery was permitted for the life expectancy of the beneficiary; they were not obligations imposed by will and furnish no guide for the interpretation of the obligation before the court. However, in Dunbar v. Dunbar, 190 U. S. 340, recovery for a specified period was sustained on a contract for support, and the reasoning of the opinion would indicate that similar recoveries could be had in the future. A living charged on land is not divested by a sheriff's sale of the land on a judgment against the devisee, and the reason stated is: "on account of the impossibility of computing their amount": Walters v. Steele, 210 Pa. 219, 221; see also Walter's Est., 197 Pa. 555; Steele v. Walter, 204 Pa. 257, and Gumaer's Est., 19 Pa. Superior Ct. 621.

There is neither difficulty nor hardship in requiring defendant to respond to suit for the two periods for which he was summoned; a common illustration is the periodical recovery for wages on an annual employment

at wages payable periodically: Stradley v. Cement Co., 228 Pa. 108. Testator did not intend that his widow, at her age, in poor health, without means, should be required to live with defendant, or in the alternative should be turned out or put to a single suit for the determination before the natural end of her life, of the reasonable value to her of the obligation, with its obvious speculative elements; he made provision for her "a condition of the devise of the land to his son": Walter's Estate, supra. The court erred in holding that recovery to January 29, 1917, in the former suit was a bar to recovery for the period from February 1, 1917.

Judgment reversed and a new trial awarded.